UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHADDRICK LEVELL THOMAS,

    Petitioner,

v().  Case No. 8:07-cv-561-T-24TBM
                                                                                                    8:03-cr-162-T-24TBM

UNITED STATES OF AMERICA.

    Respondent.
_____/

**ORDER**

This cause is before the Court on Petitioner's amended Motion to Vacate, Set Aside, or Correct an Illegal Sentence pursuant to 28 U.S.C. § 2255. (Docs. cv-4; cr-248). The government filed a response in opposition to Petitioner's motion. (Doc. cv-9). Petitioner filed a reply to the government's response. (Doc. cv-10). After careful consideration of the parties' submissions, together with the files, records, and transcripts relating to Petitioner's trial and evidentiary hearing, this Court has determined that Petitioner's 28 U.S.C. § 2255 should be **DENIED.**

**I.   PROCEDURAL HISTORY**

On September 22, 2003 after a jury trial, Petitioner was found guilty of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) (counts one and five); use of a firearm during commission of a crime, in violation of 18 U.S.C. § 924(c)(1) (counts two and six); and conspiracy to possess, brandish, and discharge firearms during crimes of violence, in violation of 18 U.S.C. §§ 924(c) (count eight). (Docs. cr-93 and cr-189). On October 14, 2004, Petitioner

was sentenced to 235 months incarceration for the bank robberies, and a consecutive term of 32 years incarceration for the § 924(c) violations. (Doc. cr-204). The sentences ran consecutive to the state term of incarceration Petitioner was then serving for second degree murder in Colorado. (Doc. cr-204).

Petitioner appealed the conviction and sentences to the United States Court of Appeals for the Eleventh Circuit, and raised the following issues:

    a.    ineffective assistance of counsel;

    b.    sentencing error pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005);

    c.    use of a peremptory challenge in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986); and

    d.    insufficient evidence to sustain a conviction.

The Eleventh Circuit Court of Appeals affirmed in part and vacated and remanded for resentencing on the issues related to <u>Booker</u>. The Eleventh Circuit declined to rule on the ineffective assistance of counsel claim, stating that the record was insufficiently developed to permit review. (Doc. cr-231). The Court found troubling the fact that the district court was "put in the position" of both having to supply facts regarding defense counsel Thomas Ostrander's sleeping during trial, as well as having to resolve factual differences between the Court's observations and the observations of others during trial. <u>Id.</u> The Eleventh Circuit concluded that the proper resolution of the ineffective assistance issues required that the functions of witness and fact finder be separated, and that this could be accomplished in a 28 U.S.C. § 2255 motion to vacate. <u>Id.</u>

On January 9, 2007, Petitioner was re-sentenced to 235 months incarceration for the bank robberies, and a consecutive term of 32 years incarceration for the § 924(c) violations. (Doc. cr-237; Doc. cr-238). The sentence was tp run consecutive to the undischarged term Petitioner was serving in Colorado (Circuit Court, El Paso County, Case Number 02CF1591). Judgment was entered on January 10, 2007. Petitioner did not appeal the sentence.

On April 2, 2007, Petitioner timely filed a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255. (Docs. cv-1; cr-243). Petitioner is proceeding on his Court-ordered amended motion to vacate in which he raises three claims of ineffective assistance of counsel. (Doc. cv-4).

The trial judge declined to rule on the motion to vacate, based on the Eleventh Circuit's opinion that resolution of the issues raised in the §2255 motion required "that the two vital functions of witness and fact finder be separated." The motion was referred to the undersigned United States District Judge to whom the case was originally assigned.

## II.    PETITIONER'S CLAIMS

Petitioner alleges that trial counsel Tom Ostrander ("Ostrander") was ineffective because he failed to prepare adequately for trial; failed to pursue an alibi defense; and failed to stay awake during critical portions of the trial. Petitioner alleges that had it not been for the ineffectiveness of his trial counsel, the jury would not have found Petitioner guilty.

## III.   EVIDENTIARY HEARING

On April 20, 2004, the Honorable William J. Castagna, the trial judge, conducted an evidentiary hearing on Petitioner's motion for new trial. The claims raised in Petitioner's motion for new trial included the identical claims Petitioner now raises in his § 2255 motion. Because at

any evidentiary hearing on this motion the same witnesses who testified at the hearing on the motion for new trial would be called, and would presumably testify in the same manner as they did on April 20, 2004 , an evidentiary hearing on the motion to vacate is not necessary.

Petitioner was represented by court-appointed counsel at the April 20, 2004 evidentiary hearing (Doc. 217) at which the following witnesses testified: Defendant Chaddrick Levell Thomas, Trial Counsel Tom Ostrander, Deputy U.S. Marshall Lisa Alfonso, Deputy U.S. Marshall Philip Coyle, and Court Security Officer Fred Bohlig.

 The Court has considered the testimony of those witnesses in ruling on this motion. The Court has also considered the trial judge's observations made during the trial which he summarized as follows: "at no time during the trial, which encompassed approximately 22 hours, did the Court witness attorney Ostrander nodding off, sleeping or other wise inattentive of the trial judge." (Doc.187 pg 27).

**IV.    DISCUSSION**

Claims of ineffective counsel are properly raised in motions pursuant to 28 U.S.C. § 2255. Thor v. United States, 574 F.2d 215, 218 (5th Cir. 1978). A defendant's right to effective assistance of counsel is derived from the Sixth Amendment. U.S. Const. amend VI. The standard used to determine whether counsel's assistance was effective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [could not have] produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).

To prove that a judgment and sentence should be vacated based on ineffective assistance of counsel, Petitioner must prove the following: (1) counsel's performance was deficient, and (2) counsel's deficiency was prejudicial. Id. at 687. Counsel's performance at trial is said to have

been deficient if it "fell below an objective standard of reasonableness." Id. at 688. To demonstrate prejudice, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. However, because both prongs must be proven, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id.

In the instant case, Petitioner cannot show that he was prejudiced by his defense counsel's performance.

### A. Trial Preparation

Petitioner's claim that his attorney was ineffective for failing to prepare adequately for trial has no merit. In the §2255 motion Petitioner does not elaborate on what his attorney failed to do or how the failure to prepare might have prejudiced him. At the evidentiary hearing on the motion for new trial, Petitioner did not present any evidence as to this claim, but made only vague general assertions regarding Ostrander's request for a continuance as confirmation of his unpreparedness. At this evidentiary hearing, Ostrander testified that prior to trial, he made several unsuccessful attempts to meet with Petitioner while Petitioner was incarcerated. Ostrander stated that he requested a continuance not because he was unprepared for trial, but because he felt Petitioner would have felt more comfortable if they had more time together before trial. For Ostrander's performance to be deficient, Petitioner must establish that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, 466 U.S. at 690. Petitioner's claim that his counsel did not prepare for trial is not supported by any evidence and he has not shown what his trial counsel failed to do

that prejudiced him at trial.

     B. <u>Alibi Defense</u>

Petitioner's also claims that Ostrander failed to pursue an alibi defense. Again, in his §2255 motion, Petitioner fails to elaborate on this claim; fails to name the potential alibi witnesses; and fails to proffer what their testimony would have been. He offers no evidence to support this claim.

Although Petitioner testified at the evidentiary hearing on his motion for new trial, he did not offer any testimony on this claim, such as who the alibi witnesses were or what they might have said. Ostrander testified that names of potential alibi witnesses were given to him by Petitioner on the first day of trial and although he gave the names to the Court as potential witnesses, he did not subpoena them to testify. Ostrander testified that he did not call them after talking with Petitioner and determining that the witnesses were not alibi witnesses. Instead, Ostrander determined they were witnesses who would impeach Scotty Carpenter, one of Petitioner's co-defendants, on collateral matters. Ostrander testified that if he thought the witnesses would have been helpful, he would have sent an investigator to speak with them.

It is unclear what impact, if any, these "alibi" witnesses' testimony would have had on the outcome of the trial, because Petitioner has not named them or offered the substance of their testimony. Accordingly, the Court cannot conclude that counsel was ineffective for failing to call alibi witnesses or that Petitioner was prejudiced by counsel's failure to pursue an alibi defense.

     C. <u>Sleeping Counsel</u>

Finally, and most significantly Petitioner claims that Ostrander repeatedly fell asleep

during critical portions of the trial. "The Defendant witnessed trial counsel sleeping on three separate occasions during the testimony of critical Government witnesses." At the evidentiary hearing on the motion for new trial, five witnesses testified about this issue.

<u>Testimony of Witnesses at the April 20, 2004 Evidentiary Hearing</u>

Petitioner Thomas testified that he took notes during the trial and that he documented three instances when attorney Ostrander fell asleep. The first instance was on September 16, 2003, while Sharon Domain was testifying. The second instance was on September 18, 2003, during the testimony of convicted co-defendant Scotty Carpenter. The third was also on September 18, 2003, at 15:00 hours during the testimony of Scotty Carpenter. Petitioner testified that on the first occasion (September 16, 2003), attorney Ostrander was actually snoring; however, he was not snoring on either of the other two occasions.

Deputy U.S. Marshal Lisa Alfonso testified that she was present at the trial one or two days. She recalled seeing Ostrander sleeping on one occasion and that he was clearly had his eyes closed and was snoring. She signaled the Petitioner to nudge attorney Ostrander. She did not recall who was testifying at the time. On other occasions she saw Ostrander with his head down, his eyes closed and a snoring sound coming from his nostrils. However she could not tell if he was sleeping.

Court Security Officer Fred Bohlig testified that he was present in the courtroom throughout the trial and that at one point a juror approached him and said she did not think it was fair that Petitioner's attorney was asleep. He did not recall what day of trial it was or who was testifying.

Deputy U.S, Marshal Philip Coyle testified that he was assigned to the trial for two full

days and for parts of the other days. He was present for part of Scotty Carpenter's testimony. He testified that he never saw attorney Ostrander asleep or heard him snoring.

Attorney Ostrander testified that he is a diabetic and that at the time of trial he was taking new medications which may have caused him to "doze off" on one or two occasions. He admits that on one occasion he was snoring. However, he believed that he was asleep for only a few seconds. He recalled being sleepy during some of the trial and struggling to stay awake, and recalled inappropriately responding to the Judge's question regarding the admission of a document.

He testified that he has been told by others that he sounds as if he is breathing heavily. He also testified that he sometimes closes his eyes during trial and recalled doing so in Petitioner's trial, but he was not asleep every time his eyes were closed. In fact he testified that he was awake and alert during the entire trial except for a few "seconds of at least the three incidents that Mr. Thomas mentioned." (Doc. cr-217 at 41).

The trial transcript indicates that Ostrander may have dozed off during the direct examination of Sharon Delamain, a bank teller and victim witness. Delamain's testimony, which lasted approximately 15 minutes, described the bank robbery; however she could not identify any of the robbers because they wore masks. She identified exhibit evidence including photographs of the robbery. Ostrander testified it was his trial strategy not to cross-examine Delamain because she could not identify any of the bank robbers. He testified that none of the defense attorneys for Petitioner's co-defendants cross-examined her at trial.

Petitioner's Argument

Petitioner's §2255 motion is not accompanied by any memorandum of law and he cites to

no case law in his motion. However Petitioner does include a memorandum of law in his reply and relies primarily on United States v. Cronic, 466 U.S. 648 (1984) and Burdine v. Johnson 262 F.3d. 336 (5th Cir. 2001) in support of his claim. He argues that attorney Ostrander's sleeping during trial was conduct that triggers a presumption of prejudice and constitutes per se ineffective assistance of counsel.

This Court disagrees that based on the facts of this case Ostrander's sleeping triggers a presumption of prejudice. The facts of this case are clearly distinguishable from those in Burdine. In Burdine, defense counsel repeatedly slept as evidence was being introduced against his client in the guilt innocence phase of a capital murder trial. 262 F.3d at 336, 338.). The Burdine Court found there was a presumption of prejudice because that defendant had been denied counsel at a critical stage of his trial. However unlike Burdine's attorney, attorney Ostrander did not fall asleep repeatedly at critical stages of the trial. Instead, he either fell asleep on one occasion for a brief time, during direct examination of witness Sharon Delamain; but if Petitioner Thomas' testimony at the hearing on the motion for new trial is credited, Ostrander was asleep only on three occasions: once during the testimony of Delamain, and twice during the testimony of co-defendant Scotty Carpenter.

An examination of the trial transcript gives no indication that attorney Ostrander was sleeping except on May 16, 2003 during the testimony of Sharon Delamain when attorney Ostrander inappropriately responded to a question from the Court as to whether he had an objection to the admission of certain exhibits. Ostrander responded "No questions for this witness."

At the evidentiary hearing, Petitioner testified that Ostrander fell asleep on May 16, 2003,

9

during the testimony of Delamain. Attorney Ostrander remembers giving an inappropriate answer to the Judge's question and admits he may have dozed off one or two times during the trial. This evidence combined with Deputy Marshal Alfonso who saw attorney Ostrander asleep (although she cannot remember the date or the witness testifying) and the observations of a juror who observed attorney Ostrander sleeping, is sufficient for this Court to conclude that attorney Ostrander was sleeping on September 16, 2003, during the testimony of Sharon Delamain. The trial judge also found that attorney Ostrander was asleep on this occasion. (Doc.187, p28)

The length of time attorney Ostrander was asleep on September 16, 2003, cannot be determined from the witnesses' testimony. Ostrander testified that it was only for a few seconds. Petitioner testified that he was snoring, and that Deputy Alfonso gave him a sign to nudge Ostrander to wake him up. The trial transcript suggests that Sharon Delamain began testifying at 1:52P.M. on September16th and concluded her testimony at 2:10 P.M. As stated above, Ostrander responded inappropriately to a question from the Judge regarding the admission of certain exhibits, and this suggests Ostrander may have dozed off. He was certainly not sleeping at the end of Delamain's testimony, however, because he responded appropriately to the Judge's question as to whether he wished to cross-examine the witness.

The only evidence that attorney Ostrander fell asleep on September 18, 2003, was from the Petitioner who testified that on that date Ostrander fell asleep on two occasions. On the first occasion, Petitioner was unable to testify as to when it occurred, other than during the testimony of Scotty Carpenter. On the second occasion, Petitioner testified that Ostrander fell asleep at 15:00 hours during the testimony of Scotty Carpenter. Petitioner did not offer any testimony as to the length of time attorney Ostrander was asleep. The trial transcript shows that on September

18th, Scotty Carpenter testified between 9:30A.M. and 11:32A.M. not including a twenty minute recess between 11:00A.M. and 11:20A.M. Ostrander cross-examined Carpenter between 11:20A.M. and 11:25:A.M. Scotty Carpenter was not testifying at 15:00 hours on September 18th. Carpenter concluded his testimony at 11:35A.M. Based on this evidence, the Court cannot conclude that attorney Ostrander was sleeping on September 18, 2003.

The Court finds that there is no presumption of prejudice in this case. The evidence suggests that Ostrander may having been sleeping on September 16, 2003 for a short period of time. Although sleeping even for short periods of times is inexcusable, this conduct is not sufficient to trigger a presumption of prejudice. Instead, Petitioner must show prejudice pursuant to the second prong of the Strickland test. Petitioner fails to do so.

Attorney Ostrander fell asleep during the testimony of witness Sharon Delamain who was on the stand for approximately 15 minutes. She was not cross examined by the defense attorneys and testified to non contested matters. A review of the trial transcript shows that Attorney Ostrander fully participated in the trial. He cross examined witnesses, made objections, made a Rule 29 motion and argument, and gave a closing argument. Petitioner has not shown that he was prejudiced by attorney Ostrander's sleeping during the trial.

Final Comments as to Harmless Error

In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court held that the harmless-error standard enunciated in Kotteakos v. United States, 328 U.S. 750 (1946), "applies in determining whether habeas relief must be granted because of constitutional error of the trial type." Brecht, 507 U.S. 619, 637-38. Because Thomas's § 2255 motion is a collateral attack, the Court must apply the Kotteakos standard. Vines v. United States, 28 F.3d 1123 (11th Cir. 1994).

Under Kotteakos, a defendant is entitled to reversal only when error resulted in "actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " See United States v. Lane, 474 U.S. 438, 449 (1986) (quoting Kotteakos, 328 U.S. at 776). The appropriate inquiry is not whether the jury was right in its judgment regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

Vines v. United States, 28 F.3d at 1130 (citing Kotteakos, 328 U.S. at 764-65). This Court must determine whether the temporary absence of Thomas' counsel, by his short interval of sleepiness, had a substantial influence on the jury's verdict in this case. The Court finds that it did not.

## VI.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside, or Correct an Illegal Sentence pursuant to 28 U.S.C. § 2255 (Doc. cv-4; cr-248) is **DENIED**. The Clerk is instructed to enter judgment against Thomas in Case: 8:07-cv-561-T-24TBM, terminate all other pending motions in that case, and close that case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS GRANTED

IT IS FURTHER ORDERED that Petitioner is entitled to a certificate of appealability on his claim of ineffective assistance of counsel on the "sleeping counsel" issue only. He is also

entitled to proceed in forma pauperis on appeal as to that issue.

    ORDERED at Tampa, Florida, on March 17, 2008

                                                SUSAN C. BUCKLEW
                                                United States District Judge

AUSA: Jay L. Hoffer
Chaddrick Levell Thomas, pro-se